Michael G. Freedman (SBN 281279)
THE FREEDMAN FIRM PC
1801 Century Park East, Suite 450
Los Angeles, California 90067
Telephone: (310) 285-2210
Email: Michael@thefreedmanfirm.com

Attorneys for Plaintiffs Ravenwood-Productions LLC and
Kevin V. Duncan

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAVENWOOD-PRODUCTIONS LLC, a Colorado corporation; and KEVIN V. DUNCAN, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> DAVID OZER, an individual; STRONG STUDIOS, INC., a Delaware corporation; MARK ROBERSON, an individual; TODD MAJOR, an individual; KYLE CERMINARA, an individual; LARRY SWETS, an individual; HASSAN BAQAR, an individual; MATT HARTON, an individual; PETER ODIORNE, an individual; SAFEHAVEN 2022, INC., a Delaware corporation; UNBOUNDED MEDIA CORPORATION, a Delaware corporation; STRONG TECHNICAL SERVICES, INC., a Nebraska corporation; STRONG GLOBAL ENTERTAINMENT, INC., a British Columbia corporation; STRONG SIGNATURES, LLC, a Delaware Corporation; and DOES 1 through 15, inclusive, <br><br> Defendants. | Case No.: 2:24-cv-03532 <br><br> **CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL** <br><br> **1) Fraudulent Concealment/Fraudulent Inducement** <br> **2) Breach of Contract** <br> **3) Breach of the Implied Covenant of Good Faith and Fair Dealing** <br> **4) Breach of the Fiduciary Duty** <br> **5) Negligence** <br> **6) Negligent Supervision** <br> **7) Civil Conspiracy** <br> **8) Declaratory Relief** |

By and through undersigned counsel, Plaintiffs Ravenwood-Productions LLC ("Ravenwood") and Kevin V. Duncan ("Duncan") (collectively "Plaintiffs") allege as follows, based upon information and belief:

## JURISDICTION AND VENUE

1.     This action is based upon federal diversity jurisdiction, 28 U.S.C. § 1332, which grants this Court jurisdiction in all civil cases between citizens of different states where the amount in controversy exceeds $75,000.

2.     Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400(a) as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## PARTIES

3.     Plaintiff RAVENWOOD-PRODUCTIONS LLC ("Ravenwood") is a limited liability company formed under the laws of Colorado. At all times relevant, Ravenwood had its principal place of business in Colorado.

4.     Plaintiff KEVIN V. DUNCAN ("Duncan") is and was, at all times relevant, an individual resident of Colorado.

5.     Defendant DAVID OZER ("Ozer") is and was, at all times relevant, an individual resident of New York.

6.     Defendant MARK ROBERSON ("Roberson") is and was, at all times relevant, an individual resident of North Carolina.

7.     Defendant TODD MAJOR ("Major") is and was, at all times relevant, an individual resident of North Carolina.

8.     Defendant KYLE CERMINARA ("Cerminara") is and was, at all relevant times, an individual resident of North Carolina.

9.     Defendant LARRY SWETS ("Swets") is and was, at all relevant times, an individual resident of Illinois.

10.     Defendant HASSAN BAQAR ("Baqar") is and was, at all relevant times, an individual resident of Illinois.

CIVIL COMPLAINT

11.     Defendant MATT HARTON ("Harton") is and was, at all relevant times, an individual resident of North Carolina.

12.     Defendant PETER ODIORNE ("Odiorne") is and was, at all relevant times, an individual resident of Pennsylvania.

13.     Collectively, the individual Defendants described in the preceding paragraphs may be referred to herein as the "Individual Defendants."

14.     Defendant STRONG STUDIOS, INC. ("Strong Studios") is a corporation formed under the laws of Delaware. At all times relevant, Strong Studios had its principal place of business in North Carolina.

15.     Defendant STRONG TECHNICAL SERVICES, INC. ("Strong Technical") is a corporation formed under the laws of Nebraska. At all times relevant, Strong Technical had its principal place of business in North Carolina.

16.     Defendant SAFEHAVEN 2022, INC. ("SH 2022") is a corporation formed under the laws of Delaware. At all times relevant, SH 2022 had its principal place of business in North Carolina.

17.     Defendant UNBOUNDED MEDIA CORPORATION ("Unbounded") is a corporation formed under the laws of Delaware. At all times relevant, Unbounded had its principal place of business in North Carolina.

18.     Defendant STRONG GLOBAL ENTERTAINMENT, INC. ("Strong Global") is a corporation formed under the laws of British Columbia, Canada. At all times relevant, Strong Global had its principal place of business in North Carolina.

19.     Defendant STRONG SIGNATURES, LLC ("Strong Signatures") is a corporation formed under the laws of Delaware. At all times relevant, Strong Signatures had its principal place of business in North Carolina.

20.     Plaintiffs are ignorant of the true names of Defendants sued as DOES 1 through 15, inclusive, and, therefore, sue these Defendants by such fictitious names. Plaintiffs will seek leave of the Court to amend this Complaint to allege

CIVIL COMPLAINT

their true names, identities, and capacities when they are ascertained. Plaintiffs allege that each of these Doe Defendants is responsible in some manner for the acts and occurrences alleged herein, and that Ravenwood's damages were caused, at least in part, by such Doe Defendants.

21.    Upon information and belief, at all relevant times, as alleged more fully herein, each Defendant acted as an agent, and/or joint venturer of the other Defendants, and in doing the things alleged herein acted within the course and scope of such agency, and/or in furtherance of the joint venture. Each of the Defendants' acts alleged herein was done with the permission and consent of each of the other Defendants.

22.    Upon information and belief, at all times relevant, each Defendant was the alter ego of the other Defendants, Defendants operated as a single enterprise, and there exists, and at all times herein mentioned has existed, a unity of interest and ownership between Defendants such that any separateness between them has ceased to exist in that each Defendant completely controlled, dominated, managed, and operated the other Defendants to suit their convenience.

23.    Specifically, at all times relevant, upon information and belief, Defendants Roberson, Major, Cerminara, and Ozer: (a) controlled the business and affairs of SH 2022, Strong Studios, Strong Technical, Strong Signatures, Unbounded, and Strong Global; (b) disregarded legal formalities and failed to maintain an arm's length relationship with SH 2022, Strong Studios, Strong Technical, Strong Signatures, Unbounded, and Strong Global; (c) inadequately capitalized SH 2022, Strong Studios, Strong Technical, Strong Signatures, Unbounded, and Strong Global; (d) used the same office or business location as SH 2022, Strong Studios, Strong Technical, Strong Signatures, Unbounded, and Strong Global; (e) used SH 2022, Strong Studios, Strong Technical, Strong Signatures, Unbounded, and Strong Global as a mere shell, instrumentality, or conduit for themselves and/or other businesses that they control; (f) used SH 2022,

Strong Studios, Strong Technical, Strong Signatures, Unbounded, and Strong Global to procure labor, services, or goods for other businesses they control; (g) manipulated the assets and liabilities of SH 2022, Strong Studios, Strong Technical, Strong Signatures, Unbounded, and Strong Global so as to possibly conceal financial interests and/or business activities; (h) used SH 2022, Strong Studios, Strong Technical, Strong Signatures, Unbounded, and Strong Global to shield against personal obligations; (i) treated as their own the assets of SH 2022, Strong Studios, Strong Technical, Strong Signatures, Unbounded, and Strong Global; (j) failed to maintain minutes or adequate corporate records for SH 2022, Strong Studios, Strong Technical, Strong Signatures, Unbounded, and Strong Global; (k) concealed or misrepresented the identity of the responsible ownership, management, and financial interests of SH 2022, Strong Studios, Strong Technical, Strong Signatures, Unbounded, and Strong Global; (l) formed and used SH 2022, Strong Studios, Strong Technical, Strong Signatures, Unbounded, and Strong Global to transfer to them existing liabilities; and (m) directed SH 2022, Strong Studios, Strong Technical, Strong Signatures, Unbounded, and Strong Global to carry out the conduct as alleged herein.

24.    Based on information and belief, during the events alleged herein, SH 2022, Strong Studios, Strong Technical, Strong Signatures, Unbounded, and Strong Global had multiple officers, directors, and/or employees in common. In particular, Roberson and Major served as directors, senior officers, and controlling owners of the foregoing companies, and in doing so, controlled and directed the foregoing companies to achieve their personal financial and business goals.

25.    Based on information and belief, during the events alleged herein, Strong Studios was the 100% shareholder and sole owner of SH 2022.

26.    Based on information and belief, during the events alleged herein, Strong Global was the 100% shareholder and sole owner of Strong Technical. Strong Technical was, in turn, the 100% shareholder and sole owner of Strong

Studios and Unbounded. As a result, Strong Global indirectly owned and controlled Strong Studios, SH 2022, and Unbounded throughout the events alleged herein.

27.     According to public records, on or around September 13, 2023, Strong Global acquired complete ownership of Unbounded in an all-stock transaction. Defendant Swets was named Chairman, Defendant Odiorne was named Chief Content Officer and Defendant Harton was named Managing Director. On or around December 31, 2023, the board of directors of Strong Global purportedly approved a plan to cause Strong Technical to sell its shares in Strong Studios and Unbounded. Strong Global's announcement of this purported sale was announced soon after Ravenwood confronted Defendants regarding the tortious scheme and breaches of contract alleged herein. Based on information and belief, Strong Global's announcement of a purported sale of Strong Studios and Unbounded was a sham designed to escape accountability for the events alleged herein. To the extent any sale has occurred, Plaintiffs allege that it was not made for reasonably equivalent value, and that the purchaser of such assets (DOE) has knowingly participated, as an agent of the other Defendants, in a scheme to conceal the wrongdoing alleged herein and to help the other Defendants evade liability for same.

## GENERAL FACTUAL ALLEGATIONS

### The *Safehaven* Story And Television Series Concept

28.     This civil action arises from events relating to the production of *Safehaven*, a supernatural thriller dramatic television series created by non-party James Seale ("Seale") and plaintiff Kevin V. Duncan ("Duncan"), and based on a graphic novel created by Seale.

29.     The graphic novel *Safehaven* was released at the Los Angeles Comic Con on October 28, 2017.

30.    On or around September 11, 2019, Seale and Duncan signed an Option Agreement with non-party Landmark Studio Group ("Landmark"), which was run by defendant David Ozer ("Ozer") as President, to develop and produce a television series based on the graphic novel created by Seale. In exchange, Landmark received the option to acquire the intellectual property rights relating to the Series, including the copyright therein, the right to distribute and promote the Series, prequels, sequels, spinoffs and derivatives thereof, and all rights ancillary thereto (the "Series IP").

31.    In or around 2020, Landmark assigned its rights under the Option Agreement to non-party Safehaven 2020 Inc. ("SH 2020"), and Landmark extended the option on or around March 1, 2021 and again on or around February 22, 2022.

32.    On or around September 22, 2020, Seale signed an Executive Producer Agreement ("EP Agreement") with SH 2020 to write the pilot episode of the Series and provide executive producer services.

33.    On or around March 3, 2022, Landmark and SH 2020 contractually assigned their rights under the Option Agreement to Strong Studios. As a result, rights to the Series IP were effectively transferred from Landmark and SH 2020 to Strong Studios.

34.    On or around March 3, 2022, Strong Studios entered into a Distribution Agreement with non-party Screen Media Ventures ("SMV") to distribute the Series. In exchange for these distribution rights, SMV agreed to advance to Strong Studios a minimum guarantee in the amount of $6,500,000 at certain milestones during the Series production process. In the same Distribution Agreement, SMV obtained the right to share in thirty-five percent of "gross receipts" generated by the Series, as defined in the contract.

CIVIL COMPLAINT

35.    On or around March 11, 2022, Strong Studios notified Seale and Duncan that the Series IP and all rights and obligations under Landmark/SH 2020's agreements with Seale and Duncan had been assigned to Strong Studios.

**Defendants' Wrongful Acts During Production Of The Series**

36.    On or about May 15, 2022, pre-production of the Series began in Canada. Cartel Pictures was engaged by Defendants to act as the service producer during production of the Series in Canada. Cartel's on-site producer was Anthony Fankhauser.

37.    In May 2022, SH 2022 was incorporated in Delaware. Strong Studios assigned all of its rights to the Series IP to SH 2022 around the same time. Strong Studios also transferred to SH 2022 its rights and obligations under the March 3, 2022 Distribution Agreement with SMV.

38.    From May 2022 through at least December 31, 2023, Ozer was the President of Strong Studios and the President of SH 2022. In this role, Ozer had authority over the finances and production activities of Strong Studios and SH 2022, and thereby controlled the financing and production of the Series. Moreover, Cerminara, Roberson and Major, as directors and senior officers of Strong Global and SH 2022 during the same period, had the authority and responsibility to oversee and direct Ozer's production of the Series, including Ozer's management of the production's finances. Cerminara, Roberson and Major did in fact exercise control over Ozer during his management of the production. Ozer managed the finances and production of the Series with full awareness, oversight, and support from Cerminara, Roberson and Major.

39.    On or around May 15, 2022, Ozer caused SH 2022 to enter into a Production Services Agreement with non-party Safehaven Pictures, Inc., to act as a production service company to SH 2022 and to undertake the services necessary to film and produce the Series in Canada and qualify for Canadian tax credits.

40.     In or around May 2022, Ozer promised to enter into a loan agreement, which was necessary to be able to pay the film and production crew.  On or around June 3, 2022, the loan Ozer had promised to close failed to close, causing the layoff of all crew members due to insufficient funding from Defendants.

41.     On or around June 7, 2022, as a result of Ozer's failure to close the loan, Duncan provided gap financing of over $350,000, which allowed the crew members to be rehired and pre-production work to continue.

42.     On or about June 15, 2022, SH 2022 entered into a Loan and Security Agreement with non-party Bank of Hope, a financial institution headquartered in Los Angeles, California.  The purpose of this agreement was for Bank of Hope to loan SH 2022 a secured, non-revolving line of credit of up to $8,944,468 for use in the payment of pre-production, production, post-production, and delivery costs of the Series.  Among other consideration for this line of credit, SH 2022 granted to Bank of Hope a senior secured interest in assets including the Series IP and the $6.5 million minimum guarantee due from SMV to SH 2022 under the March 2022 Distribution Agreement.

43.     By this point, the scripts for the first 10-episode season of the Series were complete and the entire first season was ready to be filmed.  Despite having access to more than enough credit to fully finance and complete principal photography of the first season, Ozer, Strong Global, Strong Studios, and SH 2022 corruptly or recklessly mismanaged the production's finances, including delaying access to the line of credit, submitting and approving fake invoices, causing significant delays to principal photography and a reduction in the amount of footage that could be used in the final production.  By diverting funds to third parties not associated with the production, Defendants not only prevented the payment of legitimate vendors working on the show, but also caused the production company to cut shooting days, which resulted in shorter running times for the episodes than Defendants had guaranteed in their agreement with SMV.  The

original production schedule for the Series in June 2022 called for 70 shooting days. Due to Defendants' misuse of production funds, the production ended up shooting only 65 days.

44.    Filming was originally scheduled to begin on or around June 10, 2023. Due to Ozer's delay in accessing the line of credit, SH 2022 had insufficient funds to pay its vendors or its staff. This delayed principal photography on the Series for several weeks. These delays created the substantial risk that the crew would leave the project for other work, which put the entire production in jeopardy.  These delays continued to occur until production activities concluded in September 2022—but not before causing significant reductions to the runtime of episodes of the Series that were able to be filmed during the production period.

45.    In addition, to make up for these delays he caused, Ozer demanded that shooting days and personnel be cut from the production. His demands created shorter running times on several episodes (under 40 minutes) thereby jeopardizing any possible sale to a broadcast or cable network (which require running times of at least 42-44 minutes).

46.    On information and belief, SH 2022's inability to pay vendors was caused by Defendants' submitting and approving fake invoices for payment by Safehaven Pictures, Inc. as well as requesting payments to vendors who were not authorized to work on production of the Series and who did not provide any meaningful services to SH 2022, Strong Studios, or the Series. Based on information and belief, these unauthorized invoices and transfers approved by Defendants may have been executed as part of a scheme to personally enrich Defendants Ozer, Swets, and Baqar.

47.    By means of a document purportedly dated on or around June 22, 2022, Ozer also caused SH 2022 to enter into a fraudulent executive producer agreement ("EP Agreement") with Unbounded. Ozer never submitted this EP Agreement as part of the other EP Agreements he submitted and he never included

it in the locked budget. Safehaven Pictures, Inc, Bank of Hope, and Plaintiffs never received a copy of the EP Agreement until February 2024 after they discovered Defendants' financial improprieties. Based on information and belief, this EP Agreement was actually created in 2023 and was back-dated by Defendants to create the false appearance of a legitimate executive producer relationship between Unbounded and SH 2022.

48. Under this EP Agreement, SH 2022 agreed to pay to Unbounded a sum of $15,000 per episode of the Series produced. On information and belief, Unbounded did not perform any work or provide anything of value in consideration for this fee. Moreover, the fees that SH 2022 agreed to pay to Unbounded under the June 22 EP Agreement far exceeded the executive producer fees that SH 2022 paid to other entities who actually contributed meaningful production services to the Series, including non-party Cartel Pictures.

49. On or around September 3, 2022, Ozer authorized a payment of $37,500 directly to Unbounded officer Hassan Baqar. Specifically, on September 2, 2022, Ozer forwarded Fankhauser an email from Baqar dated August 31, 2022 in which Baqar sent Ozer wire instructions for Unbounded Services LLC. On September 6, 2022, Ozer emailed Fankhauser and copied Baqar to confirm that the Unbounded wire had cleared. Fankhauser confirmed that the wire had cleared.

50. On or around September 21, 2022, Ozer authorized a payment of $37,500 directly to Unbounded officer Larry Swets. Specifically, Ozer emailed Fankhauser instructions for a wire to Unbounded on September 21, 2022 and then thanked Fankhauser once the wire was confirmed on September 22, 2022. The email chain included the following attachments: a June 22, 2022 invoice from Unbounded to SH 2022 for $37,500; wire instructions listing the ultimate beneficiary/receiver as Unbounded Services, LLC with an address in Itasca, Illinois associated with Swets; and confirmation showing the wire was processed on September 22, 2022.

51.    Both of these payments expose Ozer's intent to fraudulently divert production funds to his associates who did not perform any work or provide anything of value in consideration for these payments. Further, on or around September 15, 2022, Unbounded officer Matt Harton signed a "Producer Holdback Agreement" for an additional $75,000 in executive producer fees to be paid to Defendants, despite Harton knowing no executive producer agreement for Unbounded was in place.

52.    On information and belief, Ozer, Swets, Baqar, and other Defendants named herein knowingly misappropriated no less than $122,000 during production and $167,485 during post-production from the production budget of the Series through fraudulent invoices approved by Defendants.

53.    As a result of the fraudulent transfers approved by Defendants, and due to the reckless oversight of production activities by Ozer, the production costs of the Series greatly exceeded the production budget.

54.    On or around September 23, 2022, production of the first season of the Series concluded.

**Duncan Agrees To Provide Supplemental Financing To The Series**

55.    Despite obtaining a $6.5 million minimum guarantee and millions of dollars in Canadian tax credits, which should have been enough to finance production and post-production of the Series, the production needed more money to replace the funds that Defendants wrongfully siphoned away from the production budget.

56.    For example, on or around August 30, 2022, Anthony Fankhauser of Cartel Pictures specifically warned Ozer that the production was about to run out of money again and that crew would need to be laid off again if SH 2022 did not secure additional financing to complete filming and post-production activities.

57.    Accordingly, Ozer approached Duncan to request a contribution of additional funds to the production. Ozer did not tell Duncan that Ozer had caused

SH 2022 to divert tens of thousands of dollars from the production account to enrich himself. Although Duncan was aware by this point that SH 2022 was having difficulties paying its vendors and that the Series running time may need to be reduced, Defendants concealed from Duncan the fact that these problems were the result of their financial mismanagement of the production.

58.     Around September 23, 2022, Duncan and a company owned and controlled by him, Kahiltna LLC, entered into a Memorandum of Agreement ("MOA") with SMV to provide $500,000 in supplemental financing to SH 2022 as a resource to promote the successful completion of the Series. Among other things, Duncan received as consideration a share of any gross receipts that the Series would ultimately generate after production and distribution after full recoupment of the advance under the distribution agreement with SMV.

59.     When he entered into the MOA, Duncan did not know and could not have reasonably discovered that Ozer and the other Defendants had engaged in the financial improprieties and mismanagement of the Series production activities alleged herein. Duncan did not know and could not have reasonably discovered that Defendants needed Duncan's money because they had stolen a large portion of the production budget for their personal use, including but not limited to Defendant Ozer's settling a bank foreclosure on his personal residence located in Roslyn, New York in September 2023

60.     In reliance on Defendants' assurances and the September 23, 2022 MOA, on October 25, 2022 Duncan did pay the $500,000 in supplemental financing to SH 2022 in order to finance production of the Series. By entering the September 23, 2022 MOA and personally contributing financing to the Series, Duncan obtained a participation in the sales proceeds of the Series. Defendants' acts alleged herein injured Duncan by obstructing production of the Series and reducing the value of the Series that could ultimately be completed and sold to distributors.

CIVIL COMPLAINT

**Defendants' Wrongful Acts Delay Post-Production Of The Series**

61.    In or around October 2022, the first season of the Series went into post-production. Again, Ozer controlled and managed the finances of SH 2022 during all post-production activities. Ozer acted under the direction and oversight of Roberson and Major at all times. Again, Defendants' corrupt mismanagement of the production's finances caused lengthy delays to the post-production process and losses of substantial assets that otherwise would have accrued to owners of rights to the Series IP.

62.    According to a post-production schedule prepared by Cartel Pictures in August 2022, post-production of the Series should have concluded by March 2023.

63.    However, SH 2022 was chronically unable to pay key vendors and staff members, resulting in long stoppages of the post-production work. Post-production was not near to being completed by the time the entertainment industry strike began in the summer of 2023. Due to these delays caused by Defendants, the Series was not ready to be presented to potential buyers until June 2023, during an industry-wide work stoppage where many buyers were not open to acquiring new shows. In addition, since the end of the strikes, a massive financial contraction in the entertainment industry has diminished the sales potential for the Series. As of this filing, post-production activities are still not complete due to Defendants' continued failure to pay legitimate vendors and production partners and the Series is not ready for sales or distribution.

64.    Ozer continued to make unauthorized payments to unapproved or fraudulent vendors throughout post-production activities in 2023, including tens of thousands of dollars in additional fraudulent wires, thereby diverting funds from post-production services necessary to convert the Series into a finished product that can be successfully marketed to television studios.

CIVIL COMPLAINT

## Ravenwood Acquires 75% of the Series IP

65.     In or around June 2023, Duncan agreed to take a larger stake in the production, through his company Ravenwood in exchange for paying off the loan from Bank of Hope. At this time, Duncan and Seale were concerned that a broadcast agreement that had been reached with the Crackle streaming platform would not be honored. Crackle had previously agreed to pay for the show in advance and to broadcast it.  In May of 2023, distributor SMV had notified Ozer and Strong that they would not accept delivery of the show. Duncan and Seale discussed this concern with Bank of Hope, which informed them that if Strong Studios did not pay off the loan, then Bank of Hope would foreclose on its loan and would sell the Series to any interested buyer in a "fire sale".

66.     To avoid this, on or around June 30, 2023, Ravenwood entered into a Management Agreement with SH 2022 and Strong Studios. A true and correct copy of the Management Agreement is attached hereto as Exhibit A.

67.     The parties to the Management Agreement agreed that Ravenwood would pay off the amount due to the Bank of Hope for the minimum guarantee under the Distribution Agreement with Screen Media Ventures, in the principal amount of $6,366,062.01.

68.     In return, the parties agreed that Ravenwood would own 75% of all intellectual property related to the Series, Duncan would be appointed as treasurer for SH 2022, and any disposition of gross receipts with respect to the Series would require the signature of two officers of SH2022, one being Mr. Duncan and the other an officer appointed by Strong Studios.

69.     On or around July 7, 2023, Ravenwood paid the full amount of the contractual loan payment due to Bank of Hope, a total amount of approximately $6,366,062. During the same month, a substantial tax refund from the Canadian government was deposited into SH 2022's bank account, located at in Los Angeles, California.

**Defendants Sabotage Post-Production By Continuing To Drain Money Out Of The Production Bank Accounts For Personal Expenditures**

70.    In the months following execution of the Management Agreement, and contrary to the express provisions therein, Defendants prevented SH 2022 from paying outstanding post-production invoices due for the Series, failed to provide Duncan with access to bank statements for SH 2022 despite repeated requests, and siphoned funds out of SH 2022's Los Angeles, California bank account at Bank of Hope without Duncan's knowledge or consent.

71.    On or around December 12, 2023, Ozer personally represented to Duncan that at least $156,755.97 was in SH 2022's bank account at the Bank of Hope branch office in Los Angeles. Specifically, Ozer sent Duncan an older bank statement from August 31, 2023 purporting to show a balance of $156,755.97, but the actual bank balance as of that date was only $65,030.25. Furthermore, as of December 12, 2023, the account only had $5,523.67 left in it. These funds could have been used to pay SH 2022's vendors and continue post-production activities.

72.    In truth—as Duncan would later learn—Ozer actually drained all of the money remaining in SH 2022's bank accounts to finance his own personal expenses. In other words, Defendants continued to abuse their oversight of the Safehaven production account. Under the Management Agreement, any outgoing payments from SH 2022's bank accounts had to be jointly approved, but Defendants disregarded this requirement and transferred funds out of the Los Angeles, California bank account without obtaining consent from Ravenwood or Duncan. Defendants' complete lack of oversight and theft of funds from the *Safehaven* production account negatively impacted crucial relationships with service providers for the Series, who were and are unwilling to do any additional work until they are paid.

73. Specifically, in addition to the funds he diverted in 2022 and early 2023 as described above, Defendants orchestrated the following outflows of money from SH 2022's bank account on the following dates:

    a. Outgoing wire to Deluxe Media dated 08/21/23 in the amount of $50,815.72

    b. Outgoing wire to Kaleb Logan dated 08/24/2023 in the amount of $9,875.00.

    c. Outgoing wire to Kaleb Logan dated 08/28/2023 in the amount of $12,895.00.

    d. Outgoing wire to Kaleb Logan dated 08/31/2023 in the amount of $18,000.00.

    e. Outgoing wire to Daquan Williams dated 09/08/2023 in the amount of $8,475.00.

    f. Outgoing wire to ASB Corporation dated 09/14/2023 in the amount of $14,000.00.

    g. Outgoing wire to J2S2 Entertainment dated 10/02/2023 in the amount of $4,850.00.

    h. Outgoing wire to J2S2 Entertainment dated 10/03/2023 in the amount of $3,925.00.

    i. Outgoing wire to J2S2 Entertainment dated 10/20/2023 in the amount of $4,250.00.

    j. Outgoing wire to Kaleb Logan dated 10/31/2023 in the amount of $4,650.00.

    k. Outgoing wire to Kaleb Logan dated 11/03/2023 in the amount of $4,950.00.

74. None of the foregoing payments related to legitimate expenses for the production of the Series. None of these vendors performed work for the Series. None of these vendors were named in the budget for the Series.

75.    Moreover, in August 2023, Strong Studios and Ravenwood agreed to distribute a large portion of the funds remaining in SH 2022's production account to each party. On August 21, 2023, Strong Studios received $219,305.02 and Ravenwood received $180,694.98 via wire transfers from the Los Angeles, California bank account of SH 2022, per the terms of this agreement. These were the only two wire transfers that both parties agreed would be transferred out from SH 2022's accounts. Beginning on August 21, 2023, Ozer authorized an additional four wires totaling $91,253.72. The wires were paid to apparently fake vendors: Deluxe Media and Kalan Logan. These fraudulent transfers represented 58.5% of the remining money in SH 2022's bank account. Duncan was not aware of these wires and did not consent to them. The actual purpose of these payments is still unknown to the Plaintiffs.

76.    Around September 2023, Strong Global acquired Unbounded Media.

77.    Around late December 2023, Ravenwood and Duncan were finally able to obtain access to SH 2022's bank statements for the period from July 2023 through December 2023—records they were entitled to access under the Management Agreement. Following an investigation, Ravenwood discovered that Ozer had fabricated numerous invoices from phony vendors who had not actually provided any work or services on the Series. This investigation confirmed Plaintiffs' worst fears: that Ozer had been siphoning money out of SH 2022's bank accounts to line his own pockets.

78.    Plaintiffs immediately demanded that Defendants—including Ozer, Major, Roberson, Strong Studios and its corporate affiliates—provide an explanation for the suspicious payments that appeared in the bank records. Defendants took a week to send "proof" that the payments were legitimate. On January 3, 2024 during a text exchange with Kyle Cerminara, Cerminara assured Duncan that he had "seen the drafts to your letter. They just wanted to make sure its accurate." Executives at Strong Studios and Strong Global—including Major,

Roberson and Cerminara—signed off on the fake supporting documents provided to Duncan, evidencing their knowledge and participation in covering up the misappropriation of funds from SH 2022's bank account.

79.    For example, Plaintiffs' investigation revealed that Ozer, and perhaps others working with him, had fabricated several invoices and created fake payees in an effort to conceal the fact that Defendants were stealing large sums of money from the *Safehaven* production budget:

a. The August 21, 2023 payment of $50,815.72 to Deluxe Media was not based on a valid invoice from Deluxe Media. Deluxe Media performed no services for the Series. Representatives from Deluxe Media and *Safehaven*'s post-production facility confirmed that Deluxe Media did not perform any post-production services. Ozer also apparently created a similar-sounding domain name for Deluxe Media and a false invoice containing fake contact information in an apparent effort to prevent anyone from discovering this theft of funds.

b. The payments totaling $53,170 to "Kaleb Logan" were fraudulent and did not correspond to any services provided to the Series by anyone named Kaleb Logan.

c. The September 8, 2023 payment of $8,475 to Daquan Williams, as well as $47,000 in additional payments from SH 2022's bank account to Daquan Williams during production activities in 2022, were not based on any services provided to the Series by anyone named Daquan Williams. The only Daquan Williams Plaintiffs have been able to locate is a prison inmate in Georgia. By authorizing payments to Daquan Williams during filming, Ozer diverted funds that could have been used for the Series. Instead, Defendants ordered that shooting days be cut from the production

schedule due to a purported shortage in funds, thereby negatively affecting the quality of the episodes that were filmed.

d. The September 14, 2023 payment to ASB Corporation was not based on a valid invoice. ASB Corporation performed no services for the Series. *Safehaven*'s post-production facility confirmed that ASB Corporation did not provide any services to the production. Ozer also apparently created a fake domain name for ASB Corporation and a false invoice including fake contact information in an apparent effort to prevent anyone from discovering this theft of funds.

e. The wire payments to "J2S2 Entertainment" were payments to a company controlled by Ozer. J2S2 Entertainment did not provide anything of value to the Series. As alleged above, the Strong Global executives sent Plaintiffs documents in early 2024 that (they claimed) justified the outgoing wire transfers. These documents included a letter from accounting firm Charles, Boudin & Company, LLP ("CBC"). The letter, dated January 2, 2024 from CBC Partner Andrew Charles, purported to state that CBC managed Ozer's finances and that CBC "divested David [Ozer] from J2S2 Entertainment" in 2013. In fact, Ozer never divested his controlling stake in J2S2 Entertainment and Andrew Charles never authored this letter. This letter was an apparent forgery designed to fool Plaintiffs into believing Ozer had no relationship to J2S2.

80.    In or around June 2023, while the Series was still being completed and in an attempt to conceal Defendants' fraudulent actions, Ozer proposed screening the first two episodes to buyers during a historic entertainment industry labor strike in Los Angeles in an effort to secure a quick sale and conceal the missing funds diverted by Defendants. This ill-timed tactic by Ozer was not

CIVIL COMPLAINT

successful and no buyers were looking to acquire an unfinished series during the strikes.

81.    On or around January 1, 2024, both Strong Studios and Unbounded Media were shuttered after Defendants were alerted to Plaintiffs' claims.

82.    As of this filing, Plaintiffs have not secured or been offered any agreement with any distributor to screen, distribute, or otherwise market the Series. Defendants' wrongful misappropriation of funds and mismanagement of the Safehaven production process substantially delayed completion of the Series, shortened the episode runtimes, and harmed Plaintiffs by preventing any deal to market or distribute the completed Series. Plaintiffs have invested considerable time and financial resources into the Series and have lost reasonably foreseeable profits as the proximate result of Defendants' theft of funds and sabotage of production activities.

## FIRST CAUSE OF ACTION

### Fraudulent Concealment/Fraudulent Inducement

### (By Ravenwood and Duncan Against Ozer, Major, Roberson, and Cerminara)

83.    Plaintiffs re-allege the foregoing paragraphs as though fully stated herein.

84.    By June 2022, the scripts for the first 10-episode season of the Series were complete and the entire first season was ready to be filmed. Duncan possessed an interest in the commercial success of the Series pursuant to the September 2019 Option Agreement with Landmark.

85.    In or around June 2022, SH 2022 entered into a Loan and Security Agreement with non-party Bank of Hope, a financial institution headquartered in Los Angeles, California, to obtain a non-revolving line of credit of up to $8,944,468, ostensibly for use in the payment of pre-production, production, post-production, and delivery costs of the Series.

CIVIL COMPLAINT

86.    However, Defendants Ozer, Major, Roberson and Cerminara had abused their positions of authority over SH 2022, Strong Studios, and Unbounded to wrongfully and corruptly siphon money out of the production budget. Despite obtaining a multi-million dollar guarantee that should have been more than enough to finance production and post-production of the Series, the Individual Defendants needed more money to replace the funds that they wrongfully siphoned away from the production budget.

87.    In approximately late August 2022, Ozer approached Duncan to request a contribution of additional funds to the production. Ozer told Duncan that SH 2022 needed additional funds to complete production activities of the Series. Ozer *did not* tell Duncan that Ozer had caused SH 2022 to divert tens of thousands of dollars from the production budget to unauthorized vendors and activities unrelated to the Series.

88.    As a result of these omissions, Ozer's request for additional funds was materially misleading. Had Duncan known that Defendants had siphoned away considerable amounts of money from the Series and mismanaged production activities, Duncan would not have agreed to provide any financing to the Series without a complete change of management and return of all misappropriated funds.

89.    However, Duncan was unaware of the omitted facts, and in reliance on Ozer's materially misleading assurances that Duncan's money was necessary to complete production activities, on or around September 23, 2022, Duncan entered into a Memorandum of Agreement with SMV to provide $500,000 in supplemental financing to SH 2022 as a resource to promote the successful completion of the Series.

90.    When he entered into this Agreement, Duncan did not know and could not have reasonably discovered that Ozer had stolen funds or that Cerminara, Major and Roberson had mismanaged the Series production activities alleged herein. Duncan did not know and could not have reasonably discovered that Defendants

needed Duncan's money *because* they had already misappropriated or squandered a large portion of the *Safehaven* production budget.

91.    Duncan did pay the $500,000 in supplemental financing to SH 2022 in order to finance production of the Series. By entering the September 23, 2022 Memorandum of Agreement and personally contributing financing to the Series, Duncan obtained additional rights to participate in the commercial success of the Series. Defendants' acts alleged herein injured Duncan by negatively impacting production of the Series and by reducing the value of the Series that could ultimately be completed and sold to television or streaming services.

92.    On or around June 30, 2023, Ravenwood entered into a Management Agreement with SH 2022 and Strong Studios. Under this Management Agreement, Ravenwood agreed to pay off the production loan due to the Bank of Hope for the minimum guarantee under the Distribution Agreement with Screen Media Ventures, in the principal amount of $6,366,062.01.

93.    While negotiating this Management Agreement in June 2023, Duncan (acting on behalf of Ravenwood) relied upon representations made to him by Ozer about the finances of the Series, the status of production activities, and how the remaining production funds would be used. Ozer omitted the material facts described above, including that Defendants had mismanaged production activities. Ozer also omitted the material fact that he intended to misappropriate funds that would be credited to SH 2022's bank account, located in Los Angeles, California, following Ravenwood's payment of the $6,366,062.01 to Bank of Hope under the Management Agreement.

94.    During these negotiations, Ozer also provided to Duncan a final cost report that purported to represent the production budget for the Series and its expenses incurred to date. This document was materially misleading because it mischaracterized large transfers of funds out of the production budget to personally

enrich Ozer as purported payments to legitimate vendors and other entities supposedly involved in the production.

95.    In reliance upon Ozer's materially misleading representations and the falsified cost report, Ravenwood agreed to enter into the Management Agreement, and on July 2, 2023, paid the full amount of the contractual loan payment due to Bank of Hope, a total amount of approximately $6,366,062. Ravenwood would not have entered into the Agreement, and would not have paid off the loan to Bank of Hope, had it known the omitted facts alleged above.

96.    As the proximate result of relying upon Ozer's materially false and incomplete representations, Ravenwood has suffered harm, including but not limited to the $6,366,062 that it paid to Bank of Hope.

97.    Defendants knew that Ozer's misrepresentations of material fact were false when he made the misrepresentations, or had reckless disregard for their truth.

98.    Defendants caused the alleged misrepresentations with intent to induce Duncan and Ravenwood to agree to, and perform, the foregoing agreements, including by paying substantial sums of money to finance the production activities overseen and controlled by Ozer, Cerminara, Major and Roberson.

99.    Cerminara, Major and Roberson are individually liable for Ozer's fraudulent conduct because they aided and conspired in a single enterprise, the object of which was to obtain money from Duncan and Ravenwood through the use of deception and false statements regarding the Series. At all relevant times, each of these Defendants acted as an agent, and/or joint venturer of the other Defendants, and in doing the things alleged herein acted within the course and scope of such agency, and/or in furtherance of the joint venture. Each of the Defendants' acts alleged herein was done with the knowledge and consent of each of the other Defendants. Cerminara, Major and Roberson have aided Ozer's fraudulent scheme by providing fake supporting documents to Duncan after Plaintiffs confronted Defendants regarding suspicious payments out of SH 2022's

bank account in December 2023 and January 2024. This apparent effort to cover up Ozer's fraud evidences their knowledge and participation in the fraud.

## SECOND CAUSE OF ACTION

### Breach of Contract

### (By Ravenwood Against All Defendants)

100.    Plaintiffs re-allege the foregoing paragraphs as though fully stated herein.

101.    On June 30, 2023, Ravenwood entered into the Management Agreement with SH 2022 and Strong Studios.

102.    Under the Management Agreement, SH 2022 and Strong Studios agreed to the following obligations: to hire a mutually agreed production accountant to oversee the accounting and payment of residuals, deferred fees, and participations in the Series; to appoint Duncan as Treasurer of SH 2022; to make Duncan the primary contact for the production accountant; to dispose of all Gross Receipts (a defined term that included all credits deposited by Bank of Hope into SH 2022's bank account located in Los Angeles, California) in accordance with the Management Agreement; and to require the signature of two officers of SH 2022— one being Duncan—for any disposition of Gross Received received by SH 2022.

103.    Ravenwood performed all of its material obligations under the Management Agreement, including but not limited to the payment of $6,366,062.01 to the Bank of Hope in Los Angeles, California.

104.    SH 2022 and Strong Studios materially breached the Management Agreement in several ways, including by disposing of Gross Receipts (including a sum that exceeded $75,000 and was credited by Bank of Hope into SH 2022's bank account located in Los Angeles, California) without the knowledge, consent, or signature by Duncan. Defendants' breaches of the Management Agreement included transferring funds from the SH 2022 bank account to Ozer and other

Defendants, via the false and deceptive transactions alleged above, for the Individual Defendants' personal benefit and unrelated to any production activities.

105.   Defendants' breaches of the Management Agreement have caused harm to Ravenwood in amount to be proven at trial, including but not limited to damage caused to the Series IP, and loss of the expected value that Ravenwood would have received in return for the $6,366,062.01 deposit payment, had Defendants performed their obligations under the contract.

106.   Ozer, Major, Roberson, and the other Individual Defendants are liable for SH 2022's and Strong Studios's breaches of the Management Agreement because they abused and disregarded the corporate form, as alleged above, resulting in a degree of unity of ownership and interests such that adhering to the corporate formalities would sanction a fraud or promote injustice.

107.   Strong Technical, Strong Global, Unbounded, and Strong Signatures also share liability for breach of the Management Agreement because, at all times relevant, they shared common ownership and management with SH 2022 and Strong Global. Based on information and belief, the foregoing corporate entities were organized in a manner such that the Individual Defendants controlled them and used them as shells and instrumentalities to promote the Individual Defendants' personal interests. For example, Individual Defendants caused SH 2022 and/or Strong Global to transfer funds obtained through the breach of the Management Agreement to the other corporate Defendants alleged herein, as a means of concealing their theft of funds from the *Safehaven* production. Collectively, all Defendants conspired and agreed to abuse and disregard the corporate form, resulting in a degree of unity of ownership and interests among all named Defendants such that adhering to the corporate formalities would sanction a fraud or promote injustice.

## THIRD CAUSE OF ACTION

**Breach of the Implied Covenant of Good Faith and Fair Dealing**

**(By Ravenwood Against All Defendants)**

108.  Plaintiffs re-allege the foregoing paragraphs as though fully stated herein.

109.  On June 30, 2023, Ravenwood entered into the Management Agreement with SH 2022 and Strong Studios.

110.  Ravenwood performed all of its material obligations under the Management Agreement, including but not limited to the payment of $6,366,062.01 to the Bank of Hope in Los Angeles, California.

111.  SH 2022 and Strong Studios undertook several wrongful acts that prevented Ravenwood from receiving the benefits under the Management Agreement—including successful completion and marketing of the Series—including by disposing of Gross Receipts (including a sum that exceeded $75,000 and was credited by Bank of Hope into SH 2022's bank account located in Los Angeles, California) without the knowledge, consent, or signature by Duncan. Defendants' breach of the Management Agreement included transferring funds from the SH 2022 bank account to Ozer and the other Defendants, via the false and deceptive transactions alleged above, for the Individual Defendants' personal benefit and unrelated to any production activities.

112.  By doing so, SH 2022 and Strong Studios did not act fairly and in good faith.

113.  Defendants' breaches of the Management Agreement have caused harm to Ravenwood in amount to be proven at trial, including but not limited to damage caused to the Series IP, and loss of the expected value that Ravenwood would have received in return for the $6,366,062.01 deposit payment, had Defendants acted fairly and in good faith when performing the contract.

114.   Based upon the alter ego allegations that appear above, the Individual Defendants, Strong Technical, Strong Global, Unbounded, and Strong Signatures also share liability for breach of the Management Agreement because they abused and disregarded the corporate form, as alleged above, resulting in a degree of unity of ownership and interests such that adhering to the corporate formalities would sanction a fraud or promote injustice.

## FOURTH CAUSE OF ACTION

### Breach of the Fiduciary Duty

### (By Duncan and Ravenwood Against All Defendants)

115.   Plaintiffs re-allege the foregoing paragraphs as though fully stated herein.

116.   When Duncan agreed in September 2022 to provide up to $500,000 in supplemental financing to the Series, he placed his trust and confidence into several of the Defendants to use this additional financing in good faith and exclusively for purposes of completing production of the Series. In providing these funds to SH 2022, Duncan placed confidence in the entities having authority over production activities and finances—including Ozer, Major, Roberson, SH 2022, Strong Studios, and Strong Global—to act in good faith and for the benefit of Duncan with respect to use of said funds.

117.   When Ravenwood agreed in June 2023 to pay off Defendants' $6,366,062.01 obligation to Bank of Hope and thereby acquire a 75% interest in the Series IP, Ravenwood placed its trust and confidence in the Defendants having control and oversight over production of the Series production— including Ozer, Major, Roberson, SH 2022, Strong Studios, and Strong Global— to act in good faith and for the benefit of Ravenwood with respect to completion of production activities and use of the remaining production budget, including but not limited to funds credited by Bank of Hope to SH 2022's bank account in Los Angeles, California as the direct result of Ravenwood paying off the $6,366,062.01 obligation.

CIVIL COMPLAINT

118.   The foregoing fiduciary duties owed by the foregoing Defendants to Duncan and Ravenwood imposed on these Defendants a duty to act with the utmost good faith in the best interests of Duncan and Ravenwood with respect to production expenditures, as well as a duty of care to promptly and professionally complete production, post-production, and marketing of the Series for distribution.

119.   The foregoing Defendants breached their fiduciary duties to Duncan and Ravenwood by, *inter alia*: siphoning funds out of the production budget to finance purchases unrelated to the Series and personally enrich the Individual Defendants; concealing their theft of production funds by creating fake invoices and sending money from SH 2022's Los Angeles, California bank account to unauthorized or non-existent vendors; by transferring money out of the production budget to unauthorized or fictional vendors without the knowledge or consent of Duncan or Ravenwood; and by delaying or canceling legitimate payments to production staff and vendors in deference to expenditures on the Individual Defendants' personal affairs.

120.   Additionally, Major and Robenson breached their fiduciary duties to Plaintiffs by failing to perform a reasonable review of production expenses or even inquiring, from Anthony Fankhauser of Cartel Pictures, if there were any unusual payments that were being authorized from the SH 2022 production account. Duncan has discovered that Mr. Fankhauser expressed serious concerns regarding several payments made during the production.

121.   These breaches of Defendants' fiduciary duties to Duncan and Ravenwood proximately caused Duncan and Ravenwood to suffer harm, in an amount to be proven at trial. For example, Defendants' improper diversion of funds from the Series substantially delayed production, preventing Plaintiffs from realizing the reasonably foreseeable financial benefits of a sale of the Series to a television or streaming distributor. Defendants' breaches of fiduciary duty also

negatively impacted the quality of the production and decreased the episode runtime in a manner that has rendered the Series less attractive to potential buyers.

122. Based upon the alter ego allegations that appear above, the other Individual Defendants, Strong Technical, Unbounded, and Strong Signatures also share liability for these breaches of fiduciary duty because they abused and disregarded the corporate form, as alleged above, resulting in a degree of unity of ownership and interests such that adhering to the corporate formalities would sanction a fraud or promote injustice. Collectively, all Defendants conspired and agreed to abuse and disregard the corporate form, and for a shared purpose of misappropriating funds from the Series production, resulting in a degree of unity of ownership and interests among all named Defendants such that adhering to the corporate formalities would sanction a fraud or promote injustice.

## <u>FIFTH CAUSE OF ACTION</u>

### Negligence

### (By Plaintiffs Against Ozer, SH 2022, and Strong Studios)

123. Plaintiffs re-allege the foregoing paragraphs as though fully stated herein.

124. Plaintiffs each possessed an interest in the commercial success of the Series. Duncan obtained an interest in the Series pursuant to the September 2019 Option Agreement with Landmark, by Duncan's August 23, 2022 Executive Producer Agreement and by contributing $500,000 in supplemental financing to the Series while production was ongoing. Ravenwood obtained a 75% share of the Series IP in June 2023 by entering the Management Agreement and agreeing to pay off the $6,366,062.01 owed by Defendants to Bank of Hope.

125. Throughout production and post-production of the Series, Ozer was the President of Strong Studios and the President of SH 2022. In this role, Ozer had direct authority over the finances and production activities of Strong Studios and

SH 2022, and consequently the financing and production of the Series. SH 2022 was wholly owned by Strong Studios during this period.

126.  By virtue of their total and direct control over the production and finances of the Series, Defendants Ozer, Strong Studios, and SH 2022 owed a duty of care to the investors and other stakeholders in the commercial success of the *Savehaven* production, including Plaintiffs.

127.  Defendants Ozer, Strong Studios, and SH 2022 breached their duty of care by committing the various acts alleged herein, including but not limited to: failing to obtain loan financing and causing the layoff of all crew members at the outset of production in June 2022; paying funds from the production budget to unauthorized or non-existent vendors, causing the production to exceed its budgeted expenses and forcing cuts to necessary staffing and production activities; failing to pay legitimate crew members and vendors, resulting in reduced episode runtimes and delayed completion of production activities; and carelessly or recklessly neglecting to manage production and post-production activities and finances in a reasonably prudent manner such that significant delays, deterioration of quality, and shortened runtimes afflicted the Series production.

128.  Defendants' negligent mismanagement of the Series production has caused harm to Plaintiffs, in an amount to be proven at trial. Post-production was not near to being completed by the time of the entertainment industry strike that began in the summer of 2023. Due to these delays caused by Defendants, the Series was presented to potential buyers in June 2023 during an industry-wide work stoppage at at time when many buyers were not open to acquiring new shows. Additionally, since the strikes ended, there has been a massive financial contraction in the entertainment industry, resulting in a smaller sales potential for the Series. As of this filing, post-production activities are still not complete and the Series has not been purchased for distribution.

CIVIL COMPLAINT

129. Accordingly, Plaintiffs have lost all of the time and money that they invested in the Series production, and have received none of the reasonably foreseeable commercial returns that would have benefited stakeholders had the production activities been managed in a reasonably prudent manner.

## SIXTH CAUSE OF ACTION

### Negligent Supervision

### (By Plaintiffs Against Strong Global, Cerminara, Roberson and Major)

130. Plaintiffs re-allege the foregoing paragraphs as though fully stated herein.

131. At all times relevant, Strong Global was the owner of Strong Studios, which in turn owned SH 2022. Strong Global had ultimate control over the production and finances of Series.

132. Cerminara, Roberson and Major, as directors and senior officers of Strong Global, had the authority and responsibility to oversee and direct Ozer's production of the Series, including Ozer's management of the Series production finances. Cerminara, Roberson and Major did in fact exercise control over Ozer during his management of the production. Ozer managed the finances and production of the Series with full awareness, oversight, and support from Cerminara, Roberson and Major.

133. Strong Global, Cerminara, Roberson and Major knew, at all times relevant, that Plaintiffs each had a considerable financial interest in production of the Series—either by investing considerable sums of money in the production, by holding rights to a financial participation in the Series as executive producers, and/or by holding rights to the Series IP. By virtue of their unique degree of control over the production and finances of the Series, Strong Global, Cerminara, Roberson and Major formed a special relationship to Plaintiffs that gave rise to an affirmative duty of care to provide reasonably prudent oversight over Ozer's management of the finances and operations of the Series production.

134.    Strong Global, Cerminara, Roberson and Major breached their duty of care by totally failing to provide any oversight over Ozer's management of the finances or production of the Series. Strong Global, Cerminara, Roberson and Major failed to implement even rudimentary controls over Ozer's use of the production bank accounts, his direction of production activities, his timely payment of the Series cast or vendors, or other activities essential to completion of the production. In the absence of any oversight whatsoever, Ozer was free to plunder large sums of money from the production budget for his own personal use, refuse to pay the cast or vendors, and generally fail to manage production activities in a reasonably prudent manner.

135.    For example, Major specifically admitted to Duncan in e-mail correspondence dated December 13, 2023, that Major and Roberson had received bank statements for SH 2022's Los Angeles, California bank account through at least October 2023. The bank statement that Major and Roberson received for September 2023 reflected that only $42,262.88 was left in the account. Even if Major and Roberson were not aware that Ozer was siphoning money out of the production account for unauthorized purposes, a reasonable executive in Major's position would have performed a further inquiry into the depletion of funds—for example, by investigating whether Ozer had all the necessary signoffs from Duncan for the suspicious wire transactions alleged above, by questioning Ozer about what these payments were for, or by contacting Duncan to confirm that all of the outgoing wires that appeared in the bank statements were legitimate.

136.    Defendants' negligent supervision of the Series production activities has caused harm to Plaintiffs, in an amount to be proven at trial. Post-production was not near to being completed by the time of the entertainment industry strike that began in the summer of 2023. Due to these delays caused by Defendants, the Series was presented to potential buyers in June 2023 during an industry-wide work stoppage at a time when many buyers were not open to acquiring new shows.

CIVIL COMPLAINT

Additionally, since the strikes ended, there has been a massive financial contraction in the entertainment industry, resulting in a smaller sales potential for the Series. As of this filing, post-production activities are still not complete and the Series is not ready for sales or distribution.

137. Accordingly, Plaintiffs have lost all of the time and money that they invested in the Series production, and have received none of the reasonably foreseeable commercial returns that would have benefited stakeholders had Ozer and the other production principals been supervised by Strong Global, Cerminara, Roberson and Major in a reasonably prudent manner.

### SEVENTH CAUSE OF ACTION

### Civil Conspiracy

### (By Plaintiffs Against All Defendants)

138. Plaintiffs re-allege the foregoing paragraphs as though fully stated herein.

139. In or around September 2019, and continuing through at least December 31, 2023, Ozer formed an ongoing conspiracy with the other Defendants to misuse the Series production as a vehicle to personally enrich the Individual Defendants. Specifically, Defendants conspired to attract financing, professional services, and the Series intellectual property from Plaintiffs, siphon considerable sums of money from the production budget for the Individual Defendants' personal use, and then abandon the Series after grossly mismanaging the production and prior to completing post-production or selling the Series to buyer for distribution on a television or streaming service.

140. Pursuant to the conspiracy, Defendants did cause the wrongful diversion of tens or hundreds of thousands of dollars from SH 2022's bank account in Los Angeles, California, to unauthorized or non-existent vendors for purposes unrelated to production of the Series. Based on information and belief, such funds were instead used to personally enrich the Individual Defendants.

CIVIL COMPLAINT

141.  Defendants' wrongful acts—including the wrongful use of funds entrusted to Defendants for production of Series, and the careless or reckless mismanagement of production activities—have caused Plaintiffs significant damages, in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION

### Declaratory Relief

### (By Plaintiffs Against All Defendants)

142.  Plaintiffs re-allege the foregoing paragraphs as though fully stated herein.

143.  An actual controversy has arisen between and among Plaintiffs, on one hand, and Defendants, on the other.

144.  Specifically, a controversy has arisen over rights to the Series IP. Based on information and belief, one or more Defendants claim to own a greater percentage of the Series IP than they are entitled under the relevant agreements alleged herein. Plaintiffs request a judicial declaration that they are the rightful owners of the Series IP, based upon the agreements and the wrongful acts of Defendants alleged herein.

145.  Additionally, a controversy has arisen over the rightful ownership of considerable amounts of funds that Defendants have diverted from the production budget for the Series. Based on information and belief, one or more Defendants claim to own funds that were wrongfully taken from the *Safehaven* production, including but not limited to funds taken from a bank account in Los Angeles, California. Plaintiffs request a judicial declaration that such funds (or property purchased with such funds) rightfully belong to Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court award the following relief:

CIVIL COMPLAINT

1      1.    Compensatory damages in an amount to be proven at trial, in an amount no less than $75,000;

2.    Restitution in an amount to be proven at trial;

3.    Imposition of a constructive or involuntary trust, and appointment of an independent receiver, to preserve assets that rightfully belong to Plaintiffs;

4.    Costs of suit;

5.    Reasonable attorney's fees;

6.    A judicial declaration that Plaintiffs are rightful owners of the Series IP and certain funds or property diverted from the Series, in an amount to be proven at trial; and

7.    All such other and further relief as the Court deems just and proper.

DATED: April 29, 2024        THE FREEDMAN FIRM PC

By:   */s/Michael G. Freedman*
        Michael G. Freedman
        Attorneys for Plaintiffs
        Ravenwood-Productions LLC
        and Kevin V. Duncan

CIVIL COMPLAINT